**Nellie E. Kelly, Appellee, v. North American Union, Appellant.**

### Gen. No. 14,395.

1. INSURANCE—*incontestable clause construed.* A contract of insurance which contains an incontestable clause as follows:

"This contract shall be incontestable after two years from the date hereof, except for non-payment of dues, assessments, fines, or premiums, engaging in prohibited occupations, or becoming habitually addicted to the excessive use of intoxicating liquors, opium or other injurious drugs, or substances, contrary to the laws, rules and regulations of the association, and the agreements of the member",—

cannot be defendant against, after the lapse of two years from its date, by evidence which tends to show that the insured met his death while in the act of committing a breach of the peace.

2. · INSURANCE—*when addiction to excessive use of intoxicants not defense under particular state of pleadings.* A defense that the insured became addicted to the excessive use of intoxicating liquors in violation of a condition subsequent contained in the contract of insurance, is not available in the absence of a special plea.

3. INSURANCE—*when compliance with conditions subsequent need not be shown.* It is not incumbent upon the plaintiff in order to recover upon an insurance contract to show, in the first instance, that the deceased complied with a condition subsequent contained in the contract, having reference to the excessive use of intoxicating liquors.

4. PLEADING—*object of special plea.* The object of a special plea is to give the plaintiff notice of the special defenses relied upon by the defendant which relieves it from the obligation to pay.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed February 16, 1909. Rehearing denied March 2, 1909.

**Statement by the Court.** On June 22, 1899, Edward Kelly entered into the following contract of insurance with appellant North American Union, a fraternal benefit society, organized under the laws of Illinois:

"Number                                        Dollars
5753                                        . $2000.00

NORTH AMERICAN UNION.
BENEFIT CERTIFICATE.

This is to certify that Edward Kelly is a member of the North American Union, duly admitted to membership in Fort Dearborn Council No. 77 thereof on the 21st day of June, A. D. 1899, and that he is a contributor to the Mortuary Fund and Reserve Fund of said North American Union, and as such is entitled to all the rights, privileges and benefits and is charged with all the obligations of such membership. And witnesseth, That upon condition that the statements made by said member in his application for membership in said Council, the representations and agreements made and subscribed by him in the Medical Ex-

aminer's blank, and the answers given and certified by him to the Medical Examiner, all of which representations, agreements, statements and answers are hereby acknowledged, and declared by him to be warranties, be made a part of this contract, and upon condition that the said member complies in future with the Laws, Rules and Regulations, now governing the said North American Union, and the Mortuary and Reserve Funds thereof, or that may hereinafter be enacted to govern the same, all of which said laws, Rules and Regulations are also made a part of this contract, and upon said member assenting to and complying with all the conditions herein provided the North American Union hereby promises and binds itself to pay out of its Mortuary Fund to Mrs Nelly E. Kelly the sum of Two Thousand Dollars, in accordance with and under the provisions and the laws governing the said Fund, upon satisfactory proofs of the death of said member and upon the surrender of this certificate, provided that said member is in good standing in this Association at the time of his death, and provided also that this Certificate shall not have been previously surrendered by said member, or cancelled in accordance with the Laws of this Association, and subject also to the following provisions:

TOTAL AND PERMANENT DISABILITY. If said member shall at any time after he has been a member of this Association for a continous period of three years, become totally and permanently disabled from following any occupation not prohibited by the laws of this Association, he may, upon satisfactory proof of such total, permanent disability, surrender this certificate and receive one-half of the sum herein agreed to be paid in case of his death, which payment shall be a full acquittance of all the obligations of this contract, and shall conclude and terminate all the rights, and interests of said member, and the beneficiary or beneficiaries named herein, and acquired by virtue of his membership in said Association.

ANNUITY. When said member shall have reached the age of seventy years; no further payments of assessments shall be required, and he shall be entitled, at his option, to receive annually from and after his

seventieth birthday as an annuity a sum equal to one-tenth of the amount agreed to be paid at his death, the aggregate amount of such annual payments shall, in no case exceed the Mortuary benefit herein agreed to be paid and shall be charged against such Mortuary benefit, and his beneficiary or beneficiaries shall be entitled at his death to receive only the balance due after deducting the sum total of said annual payments so made.

SUICIDE. Should said member die by his own hand or act, sane or insane, and while he is a member of this Association, his beneficiary or beneficiaries shall in such case receive only one-half of the amount herein agreed to be paid, as a Mortuary benefit.

EXPULSION OR DEFAULT. If said member shall be expelled, or shall fail in his payments to the Mortuary and Reserve Funds, or shall default in any of his agreements, or shall suffer his membership to be terminated from any cause, prior to his death, he shall forfeit to said North American Union all moneys paid in by him on account of his membership in the Association, and he and his beneficiary or beneficiaries shall forfeit all rights acquired by virtue of his said membership, and shall not be entitled to any of the payments herein provided.

INCONTESTABLE. This contract shall be incontestable after two years from the date hereof, except for non-payment of dues, assessments, fines or premiums, engaging in prohibited occupations, or becoming habitually addicted to the excessive use of intoxicating liquors, opium or other injurious drugs, or substances, contrary to the laws, rules and regulations of the Association, and the agreements of the member.

IN WITNESS WHEREOF, the North American Union has hereunto affixed its seal and caused this certificate and agreement to be signed by its Supreme President, and attested and recorded by its Supreme Secretary, at Chicago, Illinois, this 22d day of June, A. D. 1899.

(Signed)   ROBERT E. ILES,
Supreme President.

(Corporate Seal)

(Signed)   G. LANGHENRY,
Supreme Secretary.

I accept this certificate on the conditions herein-above named and assent thereto and agree to comply therewith.

(Signed)   EDWARD KELLY.

We hereby certify that the within named Edward Kelly was duly admitted to membership in Fort Dear-born Council, No. 77, of the North American Union, on the 21st day of June, A. D. 1899.

(Signed)   BERNHARD BAUMAN,
President,
(Signed)   W. H. PETERS,
Secretary.''

Kelly, according to the record, paid all his dues to the society from his admission to membership and the making and delivery of the above contract until his death April 10, 1907. His death resulted from a blow on his head administered by one Fox.

After Kelley's death his beneficiary, Nellie E. Kelly, his widow, appellee, made proper proofs of death to appellant, and demanded payment of the amount pro-vided in the certificate, and upon the refusal of appel-lant to make payment thereof brought this action in the Municipal Court and had judgment therein for $2,000.

The declaration consists of several special counts. As no point is made upon its sufficiency, or the admissi-bility of the plaintiff's evidence thereunder, it is un-necessary to state its averments. The defendant, ap-pellant, pleaded the general issue and a number of special pleas in each of which is set up a by-law of the defendant and that said Kelly agreed to comply with the same and violated it. The first special plea sets up a law of the defendant association to the ef-fect that should a member die in consequence of en-gaging in a duel or by the hand of justice or meet death while in the act of or in consequence of vio-lating the criminal laws of any state or municipality his membership in appellant shall *ipso facto*, on the happening of any or either of such events, be annulled, and the benefit certificate shall be null and void, and

his beneficiary shall not be entitled to receive any payment thereunder. The plea alleges a violation of section 1454, chapter 39 of the Revised Municipal Code of Chicago of 1905, setting up the said section providing a penalty for disorderly conduct and averring a violation of the law and the contract, and that Kelly met his death in so doing.

The second special plea sets up the same by-law of appellant, and the violation by Kelly of section 1770, chapter 4 of said Municipal Code of Chicago on, to wit, March 31, 1907, which section provides a penalty for falsely assuming or pretending to be a policeman, or wearing a police uniform, badge or star, and that Kelly met his death while violating said section.

The third special plea sets up the by-law of appellant and its violation by said Kelly in violating section 93A of chapter 38, Hurd's Revised Statutes of Illinois of 1906, and that in consequence thereof he met his death.

The fourth special plea sets up the same by-law of appellant and the violation of section 93 of chapter 38 of said Statutes, and that by violating the same Kelly met his death.

The fifth special plea sets forth the same by-law of appellant and its violation by Kelly by violating sections 20 and 22 of said chapter 38 of said statutes and that Kelly's death was caused thereby.

Issue was joined on the several pleas by filing a similiter to the general issue and replications to the special pleas.

The plaintiff, appellee, made proof of the benefit certificate; that she was the wife of Edward Kelly, and the person named therein. The laws, rules and regulations of appellant, its certificate of incorporation, the application for membership by Kelly, including the answers made by him to the medical examiner, and the death of Kelly on April 10, 1907, were proved; and the admission of appellant in open court that

proper proofs of death had been made, and that all dues had been paid by Kelly.

R. E. HAMILTON, for appellant.

DUNN & HAYES, for appellee; WILLIAM P. HAYES, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

From the assignment of errors and the contentions of appellant's brief, we understand that it is claimed that the judgment is erroneous for two main reasons: first, because the incontestable clause of the contract does not limit appellant's right to contest the payment of the policy to the items excepted in said clause, namely, (1) non-payment of dues, etc., (2) engaging in prohibited occupations, and (3) becoming habitually addicted to the excessive use of intoxicating liquors, etc. And second, that under the pleadings appellant had the right to show that the policy was defeated and became null and void because Kelly, the insured, became habitually addicted to the excessive use of intoxicating liquors, and violated the laws of appellant.

These questions arise on the rulings of the trial court excluding the following evidence offered by appellant. Counsel for appellant offered to prove by the testimony of White that on March 31, 1907, he saw a man by the name of Harry Fox pursued by Edward Kelly, the deceased, and that White saw Kelly make a kick at Fox, and that Fox picked up a broom handle and struck Kelly with it on the side of his head; that Fox said to the officer who captured him, "Captain don't let him hit me, he has beat me up several times, pretending he is a police officer, and he ain't on the force now; and has threatened to arrest me and let me go for a little change. He asked me for a few nickels to-day which I wouldn't give him."

Counsel for appellant further offered to prove by a

witness, Blumbly, that on March 31, 1907, about 1:30 P. M. he saw Harry Fox walk north on State street toward Twenty-first street; and about midway between Twenty-first and Twenty-second streets, Edward Kelly passed Fox and turned around and motioned Fox to come back to him, at which Fox shook his head in the negative; that Kelly put his right hand in his right-hand hip pocket, as if reaching for a revolver. Thereupon Fox started to run and Kelly followed him to an alley with his hand still in his hip pocket; that the witness Blumbly spoke to Kelly "and asked what was the matter, and Kelly answered that he would get him yet." That about fifteen minutes later the witness saw Fox on State street just north of Twenty-second street, and Kelly went to Fox, who commenced to back away from him. Kelly again put his hand in his hip pocket, and thereupon Fox picked up a piece of broom handle about three feet long and struck Kelly. Before striking him Fox said to Kelly, "You are not a policeman any more and have no right to arrest me." Fox further said, "Don't shoot me." Appellant also offered the testimony of Harry Fox to the same effect, and that "he had known Kelly to be more or less of a drinking man * * * for probably four or five years up to that time."

The evidence offered tended to prove the first special plea, and if, under the contract of insurance, it constituted a defense it was error to exclude it. This raises the question of the construction of the contract of insurance, and particularly the effect of the incontestable clause at the close of the contract.

Following the general contract of insurance by which appellant in its certificate agreed to pay to appellee $2,000 out of its mortuary fund upon proof of the death of Kelly, provided he was in good standing in the appellant association at the time of his death, certain clauses and provisions appear which fix the amount to be paid in the event of the total and permanent disability of the member; and when the member

reaches the age of seventy years there is a provision for an annuity at the option of the insured; and there is another provision fixing the amount to be paid should the member die by his own hand or act; and a clause providing for the forfeiture of all rights and moneys paid by the insured in the event of expulsion or default in payments to the funds. The last provision of the contract is as follows:

"This contract shall be incontestable after two years from the date thereof, except for non-payment of dues, assessments, fines or premiums, engaging in prohibited occupations, or becoming habitually addicted to the excessive use of intoxicating liquors, opium or other injurious drugs, or substances, contrary to the laws, rules and regulations of the Association, and the agreements of the member."

We fail to discover in the provisions of the contract any obscurity or inconsistency calling for any explanation of terms or for any construction of the different clauses. The contract expresses clearly the agreement of the parties in plain language, the meaning of which is apparent as soon as it is read. The last provision of the policy making the policy incontestable after two years, except as to certain things, is plain and unequivocal. It makes the policy absolute, except for three things,—first, non-payment of dues etc., second, engaging in prohibited occupations, and third, becoming habitually addicted to the excessive use of intoxicating liquors etc., contrary to the rules and regulations of the association and the agreements of the members.

The evidence offered by appellant stated above does not tend to prove any ground of forfeiture, or of avoiding liability under the contract of insurance, mentioned in said clause. In our opinion the defense set up in the first special plea and in the proof above offered is not available to appellant under the contract, after two years from its date; and the court did not err in excluding the evidence.

In Sun Life Ins. Co. v. Taylor, 56 S. W. 668, the

fourth clause of the policy there involved provided that it should be void "if the insured dies in consequence of his * * * own criminal action." The twelfth clause of the policy provided: "If the insured shall die three or more years after the date hereof, and after all due premiums shall have been received by the company, this policy shall be incontestable." One of the defenses to the action was that the insured died in consequence of his own criminal action, and therefore the policy was void. On the trial the company offered to prove that the insured assaulted a man and that the party assaulted in his own necessary self defense slew the insured. The trial court excluded the evidence. It was contended that the twelfth clause of the policy, quoted above, did not render the policy incontestable where the insured died in consequence of his own criminal action; "that the parties did not intend by that provision of the policy to render unavailable a defense based on a violation of law which was made a breach of the policy by its terms, but that the provision as to the incontestable nature was that is should not be contested for misrepresentations in securing it."

It thus appears that the precise question presented in this case was before the Kentucky Court of Appeals. That court held in a well considered opinion, in which a number of cases in several jurisdictions are cited, that "the language providing that the policy should be incontestable does not restrict it to any particular grounds of contest, but is broad and comprehensive enough to embrace any and every defense which might have been made to it before the expiration of three years. To say that it has reference to one defense and not to another is writing into the policy terms which the very language of it excludes." The ruling of the trial court was sustained. See also Triple Link M. Ins. Co. v. Froebe, 90 Ill. App. 299.

Appellant also offered to prove by Dr. Reinhardt that the witness made a post-mortem examination of the body of Edward Kelly at the hospital. Upon opening the body and head and examining the organs he

found that death was due, in his opinion, to *necrosis* of the brain and cerebral hemorrhage due to fracture of the skull from external violence; that the witness examined the organs of the body of Edward Kelly, and from his examination it appeared that Kelly was addicted to the use of alcholic drinks and had been for some years past, or since June 19, 1901. The court excluded this evidence.

Assuming (what we do not regard as clear) that the evidence offered tended to prove that Kelly had become "habitually addicted to the excessive use of intoxicating liquors, opiums or other injurious drugs, or substances, contrary to the laws, rules and regulations of the association, and the agreements of the members," the question is, was this testimony admissible under the pleadings.

The evidence offered tended to prove that the assured had not complied with the conditions of his contract of membership and insurance. It does not tend to show that any facts stated in his application for the insurance were untrue. If Kelly became habitually addicted to the excessive use of intoxicating liquors two years after the certificate was issued, it was a failure to perform a condition subsequent of the contract, which was excepted from the incontestable clause. No special plea was filed putting in issue his failure to perform this condition of the contract, or his violation of his contract in respect to this condition. In Modern Woodmen of America v. Davis, 184 Ill. 236, it was held that the plaintiff need not prove performance of condition subsequent, unless it is put in issue by a special plea. It was not incumbent upon the plaintiff, appellee, in the first instance, to prove the truth of the statements made in the application for membership, or Kelly's compliance with the laws of the appellant association, since those matters are matters of defense. Supreme Lodge v. Matejowsky, 190 Ill. 142; Phenix Ins. Co. v. Stocks, 149 *id.* 319. Appellant in-

sists that proof of this defense is admissible under the general issue.

In 2 May on Insurance, par. 591, it is laid down as the rule that a breach of a condition subsequent, if relied on to avoid the policy must be specially pleaded, and that proof of such breach is not admissible under the general issue. To the same effect is 4 Joyce on Insurance, par. 3691. Continental Life Ins. Co. v. Rogers, 119 Ill. 474, 485. So in an action on a fire insurance policy it has been held that the defendant company cannot avail itself of the defense of violation of the conditions of the policy by a change of possession without specially pleading such defense and giving the plaintiff an opportunity to set up by replication any matter of waiver or otherwise which he might be able to present. Phenix Ins. Co. v. Caldwell, 187 Ill. 73, 82.

The reason of the rule above stated is suggested by the last case cited. The object of a special plea is to give the plaintiff notice of the special defense relied upon by the defendant which relieved it from paying the benefits secured by the policy. If the defendant had set up by special plea that the insured had become addicted to the use of intoxicating liquors the plaintiff might have replied and proved, if the facts warranted, that appellant had estopped itself from making such defense by accepting payment of dues and assessments after the insured had become so addicted, with full knowledge of the facts constituting the defense, and thus waived its right to insist on the defense.

We are of the opinion that the evidence excluded was not admissible under the pleadings and that the court did not err in excluding it.

In our opinion the record is free from substantial error and the judgment of the Municipal Court is affirmed.

*Affirmed.*